JS-6

FILED
CLERK, U.S. DISTRICT COURT

MAR 30 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DIERRO MUNIZ | ) Case No. CV-07-8066 CAS (AJWx) |
| Plaintiff, | ) **FINDINGS OF FACT AND** |
| vs. | ) **CONCLUSIONS OF LAW** |
| AMEC CONSTRUCTION MANAGEMENT, et al., | ) |
| Defendants. | ) |

This matter was tried to the Court on December 16, 2008. On January 5, 2009, the Court ordered the plaintiff to submit to a functional capacity evaluation ("FCE") in order to provide the Court with a more complete record upon which to evaluate his capacity to work. The report of that FCE was lodged with the Court on March 26, 2009 (the "2009 FCE"). Having now carefully considered the full record and the arguments of the parties, the Court finds and concludes as follows:

I.    **FACTUAL BACKGROUND**

Plaintiff Dierro Muniz was employed by defendant AMEC Construction

Management until August 1, 1991, when he stopped work due to the effects of his infection with the human immunodeficiency virus (HIV). Pl.'s Trial Br. at 1; Def.'s Trial Br. at 2. As an AMEC employee, he was covered by a long-term disability insurance policy ("the Policy") issued by the Connecticut General Life Insurance Company ("CGLIC"). Under the Policy, a claimant will only receive benefits after 24 months if he is "totally disabled," defined as "unable to perform all the essential duties of any occupation for which [he is] or may reasonably become qualified. . . ." Administrative Record ("AR") 120. Muniz received benefits under the Policy from February 1992 through September 8, 2006, when the benefits were terminated based on a lack of medical documentation to support a determination of total disability. AR 289-292.

### A. The 2005 Benefits Review

The termination of benefits was the culmination of an eighteen-month process which began in 2005 as part of CGLIC's regular review process. CGLIC sent plaintiff two forms to complete, which plaintiff completed and returned on April 19, 2005. AR 96, 536-39. On these forms, Muniz indicated he had "debilitating fatigue" and "intermitant [sic] malaise." AR 537. Muniz also stated his asthma limited his ambulation, and that he had difficulties with concentration and his attention span. Id. He noted that, in his daily life, he engaged in a variety of light household activities, as well as exercise at a gym two to three days per week doing "light cardio," stretching, and light weight resistance training. AR 538.

Upon receiving and reviewing these forms, CGLIC then requested that Muniz's treating physician, Dr. William Towner of Kaiser Permanente, complete and return a Physical Activities Assessment ("PAA"). AR 532. The PAA instructs a physician to check boxes corresponding to the duration which "[t]hroughout an 8-hour workday, the patient can tolerate, with positional changes and meal breaks, the following activites." AR 524. Each of a variety of physical functions is then listed alongside five columns, marked: "Not applicable to diagnosis(es)," "Continuously (67-100%) (5.5 + hrs),"

"Frequently (34-66%) (2.5-5.5 hrs)," "Occasionally (1-33%) (<2.5 hrs)," and "Check if supported by objective findings." Id. There is no column to check for a function that a patient cannot perform at all (less than occasionally or 1%). Id.

Dr. Towner completed the form and returned it to CGLIC. AR 524. He had marked all of the items "not applicable" except sitting, standing, walking, and ability to work extended shifts overtime. Id. For these functions, Dr. Towner had marked "Occasionally." Id. He did not check the "supported by objective findings" box for any of the functions. Id.

CGLIC also obtained Muniz's medical records, and used the data from those records and the PAA to perform a vocational assessment, determining that Muniz could perform "sedentary employment," which qualified him for a variety of clerical positions. AR 080, 410. CGLIC's Nurse Case Manager also reviewed the medical records, and determined that the records did not "support the severity of symptoms stated by" Muniz, and characterized Dr. Towner's PAA as stating that Muniz had the "ability to [] sit, stand, and walk occasionally." AR 077-078.

CGLIC shared the results of the assessment and review with Dr. Towner on December 12, 2005, and requested that he respond and indicate if he agreed with the analysis and, if not, to provide "medical documentation to support [his] position" as to Muniz's ability to "perform any occupation at a sedentary physical work category in an 8 hour day." AR 402. Dr. Towner responded via letter on January 2, 2006, indicating that he "completely disagree[d]" with CGLIC's findings, noting the "multitude of medications" Muniz was taking, which "often leave him extremely fatigued and unable to concentrate throughout the day." AR 384. Dr. Towner also noted Muniz's persistent contraction of methicillin resistant staph aureus (MRSA) infections. Id. He noted his "profesional medical opinion that Mr. Muniz will be unable to work in any field, sedentary or otherwise, in the foreseeable future." Id.

CGLIC requested more records, including testing of Muniz's cognitive status. AR 386. Records from Dr. Towner were received after repeated requests on February

13, 2006. AR 361-376. However, the records did not include any documentation of cognitive deficits. Id. As such, CGLIC determined Muniz would need to undergo a Functional Capacity Evaluation ("FCE").

### B. CGLIC Attempts to Obtain an FCE

CGLIC and its outside vendor unsuccessfully attempted to contact Muniz via certified and uncertified postal mail and telephone (though ultimately, the voice mailbox was full) to schedule the FCE several times in March, April, May, and June 2006. AR 065-067, 069, 071, 342-353.

On June 22, 2006, CGLIC sent Muniz a letter informing him it was suspending his benefits due to his failure to comply with the FCE request, and that his case would be closed effective July 21, 2006, should he not respond by that date. AR 339. On July 5, 2006, Muniz called CGLIC to inquire about his benefits, and said he had never received any of the phone messages or letters prior to the June 22, 2006 letter. He explained he had only been at his California address intermittently, as he had been caring for his ill parents in Texas. AR 338. After discussing the need for the FCE with a claim manager, Adrienne Brumfield, Muniz asked if he could complete the FCE at a facility near his parents' home in Texas. Id. Brumfield indicated she would look into such an arrangement and let Muniz know. Id.

On July 24, 2006, Muniz followed up on the July 5 conversation with a letter to CGLIC, again explaining he had failed to receive the earlier letters and/or phone calls, and that he had yet to receive any information about completing the FCE in Texas. AR 320. Unbeknownst to Muniz, CGLIC had already contacted Dr. Towner about the FCE in Texas. Since the facility in Texas required a patient be medically released before undergoing a FCE, CGLIC requested such a release from Dr. Towner on July 17, 2006. AR 324-26, 336. The following day, Dr. Towner responded that, due to his wasting[1]

---

[1] Defendant points out that Muniz's medical records do not support any conclusion of wasting, since Muniz weight was relatively stable - and increasing - at the time of this (continued...)

and fatigue, Muniz was medically "unable to participate in any functional evaluation." AR 324-26. On July 19, 2006, Brumfield then mailed Muniz a letter, explaining that the Texas facility would not be able to perform the FCE since it had been "unable to obtain the necessary requirement from [his] provider." AR 321. Muniz did not make any other attempts to obtain clearance for the FCE.

Without the FCE, CGLIC went forward with another evaluation of Muniz's case based on the existing file and eight pages of additional records from Dr. Towner, sent on August 2, 2006. The reviewing Nurse Case Manager again found that Muniz's record was "insufficient to provide a severity of symptoms that impact function." AR 124. As such, CGLIC determined it would close Muniz's claim, and on August 16, 2006, sent him a letter to this effect. The letter informed Muniz that:

> Your medical documentation does not contain any current findings or document the severity of your current condition that would prevent you from performing the essential duties of any occupation. The available medical records and your medical history does not demonstrate that you are not capable of sustaining the endurance to perform in the sedentary duty category for an 8 hour day, in accord with the U.S. Department of Labor Standards [for] the duties of any occupation.

AR 283.

C. **Muniz's Appeals**

On January 26, 2007, Muniz filed an administrative appeal, and was invited to present additional medical evidence to support his contentions. AR 260-61. In affirming its decision on March 7, 2007, CGLIC again noted that the record failed to include any testing to support Muniz's claims of cognitive impairment, or other documentation to support "the severity of a physical or mental health conditions [sic] that would cause functional deficits severe enough to prevent [him] from functioning at a sedentary capacity for the period in question." AR 261-62.

---

[1](...continued)
comment, and wasting has not been noted anywhere in his medical record. Def.'s Trial Br. at 11.

Muniz replied to the denial with a letter alleging procedural errors on the part of CGLIC, and including records from a February 2007 appointment with Dr. Towner, which he had also submitted before the denial of the first appeal. AR 254. At that appointment, Dr. Towner had noted Muniz was responsive to treatment for cellulitis, a skin infection, and noted a normal neurological examination, and that Muniz appeared alert and oriented. AR 254-256.

CGLIC again upheld its decision to terminate the claim, finding that the records failed to provide evidence of functional impairment precluding Muniz from working as of September 8, 2006. AR 249. Having exhausted his administrative appeals, Muniz then filed this action on December 11, 2007, pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B).

### D.   The Court-Ordered Evaluation

Having concluded that the administrative record provided insufficient evidence for the Court to determine whether Muniz was "totally disabled" at the time his benefits were terminated, the Court ordered Muniz to submit to a current FCE, relying upon Fed. R. of Evid. 706(a) and <u>Walker v. American Home Shield Long Term Disability Plan</u>, 180 F.3d 1065 (9th Cir. 1999). The parties mutually agreed upon a facility to conduct the evaluation. On March 25, 2009, Muniz attended Source One Rehabilitation in Fort Worth, Texas, where he was tested and evaluated by Robert Larson, a licensed physical therapist. Larson's report was lodged with the Court on March 26, 2009 (the "2009 FCE").

Larson concluded that, on the day of the evaluation, "Muniz demonstrated the capacity to perform at a sustained light to light-medium demand level." 2009 FCE at 1. Muniz was able to perform "at competitive levels when compared to individuals within the same population demographic" in several tasks. <u>Id.</u> at 1. During the FCE, Muniz was able to sit for 45 minutes with his hip/knee at a 90 degree angle, and to stand for a period of 30 minutes without sitting. <u>Id.</u> at 4. The norm for both of these activities is 30 minutes. <u>Id.</u> In stair climbing, overhead reaching and trunk bending

tasks, despite his fatigue, Muniz performed at or above the norm. Id. In lifting tasks, Muniz was able to repetitively lift weights of thirty to forty pounds. Id.

Muniz performed below the norm at several other tasks, including walking,[2] sustained squatting, and kneeling. Id. at 1, 4. Such tasks are all either "occasional" or "very occasional" for sedentary work according to the Department of Labor Physical Demand Characteristics. Id. at 4. Throughout the evaluation, Muniz reported pain in his hip and knees, and Larson noted tightness in Muniz's lumbar region. Id. at 5.

Based on Muniz's performance, Larson characterized Muniz's activity tolerance and endurance as "fair to poor"; his body mechanics, pain/behavior correlation, and upper/lower extremity strength as "fair to good"; and his coordination and pace object control as "good." Id. at 5.

## II. LEGAL STANDARD

Muniz argues that CGLIC's determination that he was not "totally disabled" was factually and legally incorrect.[3] The parties agree that the Court is to review this determination under a de novo standard, since the Policy does not confer any discretion upon CGLIC. See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962 (9th Cir. 2006) (en banc), citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In considering whether Muniz was indeed totally disabled, the Court is to analyze the record anew and "evaluate the persuasiveness of conflicting testimony and

---

[2] It was Larson's expert opinion that Muniz terminated the walking evaluation prematurely. 2009 FCE at 4.

[3] Muniz also appears to challenge the procedures used by CGLIC, in that the decision to deny benefits was not based upon a "full and fair review," as required by statute. 29 U.S.C. § 1133. For example, Muniz, both in his briefs and at trial, argues that CGLIC relied only upon a misinterpretation of the PAA in determining that he was not totally disabled, and thus fit for sedentary employment. A review of the administrative record shows this is not the case. Regardless, since the Court is providing an independent de novo review of the evidence, the sufficiency of CGLIC's review of the evidence is not at issue.

decide which is more likely true." Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc).

### III. DISCUSSION

The Court is presented with one question: whether Muniz was "totally disabled" as defined by the policy as of September 9, 2006.

#### A. Burden of Proof

The parties dispute which party bears the burden of proof in this case. Generally, a plaintiff suing for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), must establish his entitlement to benefits. See Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992); see also Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038 (11th Cir. 1998) (citing Farley). Muniz attempts to argue that, as here, where an insurer seeks to terminate disability benefits as opposed to refusing to award them in the first place, the burden of proof shifts to the defendant. This is unsupported by case law, as numerous courts, including several within this circuit, have consistently held that the burden of proof remains with the plaintiff in just such a case. See, e.g., Clifford v. Prudential Ins. Co. of Amer., No. 07-CV-126-ST, 2008 WL 4164750, at *9 (D. Or. Aug. 27, 2008); Gardner v. Bear Creek Corp., No. C 06-02822 MHP, 2007 WL 2318969 (N.D. Cal. Aug. 6, 2007); Fulayter v. Prudential Ins. Co. of Amer., No. CV06-1435-PCT-NVW, 2007 WL 433580, at *8 (D. Ariz. Feb. 6, 2007); Gatti v. Reliance Standard Life Ins. Co., No. CV01175-TUC-FRZ. 2006 WL 664422, at *6 (D. Ariz. Mar. 13, 2006).

In attempting to argue otherwise, Muniz claims "there is an exception to the rule that the burden of proof is on an ERISA claimant." Pl.'s Reply Br. at 2. However, he cites no cases which support this conclusion, and instead points to three inapposite cases from other circuits.[4] In McOsker v. Paul Revere, 279 F.3d 586, 589 (8th Cir.

---

[4] At trial, Muniz's counsel also cited Saffon v. Wells Fargo & Co. Long Term (continued...)

2002), reviewing de novo a decision to discontinue benefits, the court gave weight to the fact that a treating physician's opinion did not "vary significantly" from that which he had given before and "on the basis of which [the insurer] had been paying benefits for some time." Similarly, in Gunderson v. W.R. Grace & Co., 874 F.3d 496 (8th Cir. 1989), the court focused on the similarity between the medical evidence presented at the time the plaintiff was initially deemed disabled and when he was deemed no longer disabled. These courts did not shift the burden because the insurer had previously made a determination of disability; rather, they noted that the data the plan had relied on in initially determining that the plaintiff was disabled had remained constant. In the other case cited, Connors v. Connecticut General Life Insurance Co., 272 F.3d 127, 136

---

[4](...continued)
Disability Plan, 522 F.3d 863 (9th Cir. 2008). Saffon, though, largely concerned an interpretation of Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006), which Muniz's counsel agreed is irrelevant to the instant case. Nowhere in the court's opinion in Saffon is the burden of proof addressed. Rather, evaluating a termination of benefits under an abuse of discretion standard, the court focused on the vague and confusing nature of the Plan's communications with the claimant.

For this same reason, Solien v. Raytheon Long Term Disability Plan, No. CV 07-456 TUC DCB, 2008 WL 524391 (D. Ariz. Dec. 17, 2008), which Muniz's counsel brought to the Court's attention via a "Notice of New Authority" filed on December 29, 2008, is inapposite. There, the Court examined a decision to terminate benefits based on a lack of evidence, including mental status testing, under an abuse of discretion standard. The question in abuse of discretion cases is whether a plan had a sufficient justification for concluding a plaintiff was not disabled. Here, the question is whether the plaintiff was disabled. The reasoning of the Solien does not apply to the latter determination.

In the parties' Joint Request for Clarification, Muniz added two more cases that he claims support his argument, Ermovick v. Mitchell Silberberg, 282 Fed. Appx 623, 623 n.1 (9th Cir. 2008) and Snow v. Standard, 87 F.3d 327 (9th Cir. 1996). Neither support Muniz's argument, as the court in Ermovick criticized a district court for being improperly deferential to a plan's factual findings and Snow concerns the application of the abuse of discretion standard. As the Court has repeatedly stated, it is reviewing the factual record here de novo.

(2d Cir. 2001), the Court of Appeals merely noted that the court had made an error in treating the case as an initial denial of an application for benefits instead of as a termination of benefits, and this distinction "may have" influenced the weight afforded to certain evidence. This does not suggest a burden-shifting exception.

**B.     Analysis of the Record**

The parties do not dispute Muniz's diagnosis of "advanced AIDS."[5] His medical records from 2004 through 2007 show a viral load ranging from 136 to 781. AR 303, 315, 369, 395. Muniz's reported CD4 Cell counts, ranging from 248 to 361 cells per microliter (AR 268, 303, 369), tend to correlate with a variety of infectious and noninfectious complications, including fatigue. AIDS Education & Training Centers National Resource Center, *CD4 Monitoring and Viral Load Testing*, Clinical Manual for Management of the HIV-Infected Adult (July 2007), available at http://www.aids-etc.org/aidsetc?page=cm-107_cd4_monitor. But while both fatigue and acute alteration in a patient's level of alertness are common in patients with

---

[5] The Centers for Disease Control case definitions for HIV infection include four stages: Stage 1, Stage 2, Stage 3 (AIDS), and Stage unknown. An individual with HIV infection enters Stage 3 when they present with one of 21 "AIDS-defining conditions" or their CD4 cell count drops below 200 cells per microliter or below 14 percent. Eileen Schneider, et al., *Revised Surveillance Case Definitions for HIV Infection Among Adults, Adolescents, and Children Aged <18 Months and for HIV Infection and AIDS Among Children Aged 18 Months to <13 Years — United States, 2008*, 57 Morbidity and Mortality Weekly Report RR10 (Dec. 5, 2008), available at http://www.cdc.gov/mmwr/preview/mmwrhtml/rr5710a1.htm.

The Court takes judicial notice of this and other information about HIV/AIDS from highly-reputable sources. See Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) ("a court may take judicial notice of matters of public record . . . as long as the facts noticed are not "subject to reasonable dispute"); see also Barnes v. Ind. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan, 64 F.3d 1389, 1394, n.2 (9th Cir. 1995), quoting Hines ex rel. Sevier v. Sec'y of the Dep't of Health & Human Servs., 940 F.2d 1518, 1527 (Fed. Cir. 1991) ("Well-known medical facts are the types of matters of which judicial notice may be taken.").

Muniz's diagnosis, they can range in both severity and etiology. See Lisa Capaldini, *Symptom Management Guidelines,* HIV InSite Knowledge Base (July 2004), available at http://hivinsite.ucsf.edu/InSite?page=kb-03-01-06. A mere report of these symptoms therefore does not inform the Court whether these symptoms are so disabling as to make him "unable to perform all the essential duties of any occupation for which [he is] or may reasonably become qualified," as the Policy requires. AR 120.

The record here provides the opinion of two health care professionals who actually examined Muniz. Dr. Towner, the treating physician, explained that he is of the professional medical opinion that Muniz is unable to work, even in a sedentary occupation, due to primary symptoms of AIDS, as well as the debilitating side effects of his medications.[6] Neither CGLIC nor this Court are required to agree with Dr. Towner, though, or even "to accord special weight to the opinions of a claimant's physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). The Court shares many of CGLIC's reservations about Dr. Towner's opinion. Not only did he fail to provide any measurable test results to confirm Muniz's functional deficits despite several requests to do so, but his records show some inconsistency. For example, the notes from Muniz's February 2007 visit make no mention of any cognitive difficulties whatsoever, nor do they indicate a concern about wasting or fatigue- conditions that Towner opined made Muniz unable to proceed with the FCE in the summer of 2006. Moreover, many of Towner's opinions were provided months after he had last seen Muniz.

Larson, on the other hand, produced a report the day after he met with Muniz, and concluded Muniz is not "totally disabled." Larson provided a detailed analysis of Muniz's capabilities, and included objective measurements and charts in support of his observations. His report shows that Muniz can perform sedentary work at light or

---

[6] The Social Security Administration has also determined that, under their regulations, since 1992, Muniz has been unable to work and continues to be permanently disabled. AR 699-701.

11

light-medium demand levels.

Both parties have argued against reliance on a 2009 FCE, though. Defendant argued that any evaluation of Muniz's current functional capacity has no probative value as to his functional capacity over two years ago. Def.'s Resp. to Pl.'s Post-Trial Mem. at 3. Although Muniz did not agree with this proposition at trial or at the time of post-trial briefing, he subsequently sought clarification of the Court's order appointing an expert witness on the basis that "Plaintiff believes that a functional capacity evaluation conducted in the present cannot determine his functional capacity as of September 8, 2006." Joint Request for Clarification (Dkt. No. 43) at 4.

The Court agrees that the 2009 evaluation does not, in and of itself, establish what Muniz's ability was in 2006. As Larson noted, the FCE is based on "a snap shot performance of [Muniz's] capacity" on the date of the test. 2009 FCE at 1. However, the evaluation is still probative, and, for several reasons, Muniz's ability to function today makes it more likely that he was able to function in 2006. First, the 2009 evaluation was conducted by an independent evaluator, with no interest in the case, jointly selected by the parties. Second, Muniz has self-reported the same symptoms (fatigue, chronic back pain, and swelling and pain in his feet) and the same activity levels that he did in April 2005. <u>Compare</u> AR 538 with 2009 FCE at 1, 3. Finally, Muniz's underlying diagnosis has not changed.

In an ideal situation, the Court would have a 2006 evaluation before it in order to make a disability determination. No such document exists, however, since Muniz and his physician failed to comply with CGLIC's repeated requests for an evaluation. As discussed above, the only primary evidence from 2006 are Dr. Towner's brief, unsupported, and otherwise problematic statements and Muniz's self-reports. Weighing this evidence, along with the 2009 FCE and the evaluations of Towner and Muniz's submissions to CGLIC by CGLIC staff, the Court cannot conclude that Muniz was "totally disabled." While the Court has no doubt that Muniz does experience real, debilitating symptoms and side effects as a result of HIV/AIDS and his treatment, the

record does not support a finding that these symptoms rise to the level of total disability, and leave Muniz "unable to perform all the essential duties of any occupation for which [he is] or may reasonably become qualified."

### III. CONCLUSION

For the reasons discussed herein, the Court finds for defendant and against plaintiff. The Court finds it appropriate for CGLIC to bear the cost of the preparation of the 2009 FCE. Except as otherwise noted herein, each party is to bear its own attorneys' fees and costs.

IT IS SO ORDERED.

Dated: March 30, 2009

*Christina A. Snyder*
CHRISTINA A. SNYDER
United States District Judge